HOUSTON R.E. INCOME
PROPERTIES XV,
LTD., Appellant,

v.

WALLER COUNTY APPRAISAL
DISTRICT, Appellee.

No. 01–02–00665–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 18, 2003.

Kevin D. Jewell, Magenheim, Bateman & Helfand, P.L.L.C., Houston, for Appellant.

James R. Evans, Jr., Linebarger Goggan Blair & Sampson, LLP, Austin, for Appellee.

Panel consists of Justices NUCHIA, HIGLEY, and HEDGES.[*]

## OPINION

ADELE HEDGES, Justice (Assigned).

Appellant, Houston R.E. Income Properties XV, LTD. (Houston), appeals a judgment in which the court below determined the market and appraised values of Houston's property to be $7,000,000 as of January 1, 2000, and $7,800,000 as of January 1, 2001.

In three points of error, Houston contends: (1) the trial court erred by employing an improper method to determine the value of Houston's property, (2) the "income approach" is the preferred method in determining value under the circumstances of this case, and (3) the trial court's determination is not supported by legally or factually sufficient evidence. We affirm.

## I. Background

The property that is the subject of this dispute is identified in the Waller County Appraisal District's (the District) tax rolls as account number R122761.[1] The District appraised the value of the property at issue as of January 1, 2000 at $8,022,180. Houston protested the appraisal, and the Fort Bend County Appraisal Review Board determined the market value of the property to be $8,022,180 as of January 1, 2000, and $8,194,760 as of January 1, 2001. Houston appealed the Review Board's determination, urging that the district court, pursuant to Section 42.25 of the Texas Tax Code, reduce the appraised value of the property.[2] Both parties presented expert witnesses. Chris Barzilla, the District's expert, valued the property at $7,782,785 as of January 1, 2000 using the cost approach and valued the property at $8,028,000 as of January 1, 2001 using the income approach. Jack Hughey, Houston's expert, valued the property at $3,552,000 as of January 1, 2000, and at approximately $4,500,000 as of January 1, 2001 by employing the income approach.

## A. Method of Determining Value

■ In its first issue, Houston complains that the trial court erred when it blended two appraisal methods to arrive at its valuation.

Houston contends the trial court's judgment should be reversed because while the two experts that testified at trial arrived at their valuations by employing the cost and income approach methods, the trial court

---

[*] The Honorable Adele Hedges, who became Chief Justice of the Fourteenth Court of Appeals on December 8, 2003, continues to participate by assignment for the disposition of this case, which was submitted on November 24, 2003.

1. The property at issue is located within Harris County. The Waller County Appraisal District is involved in this dispute because it appraises all property within the Katy Independent School District, and Houston's property is within the Katy Independent School District.

2. Section 42.25 of the Texas Tax Code provides:

> If the court determines that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court.

TEX. TAX CODE ANN. § 42.25 (Vernon 2001).

blended the income approach with the market approach. Houston contends that neither of the experts relied upon, the market approach in arriving at their valuation. Houston bases its contention on the following statement from the trial court:

> Let me—since you used cash flow for 2001, I'm going to look more hard at cash flow than I probably would have otherwise. The thing that makes the most sense from a non real estate, just sort of a guy-around-town sort of guy like me is what is a comparable per square foot sale. And that is the easiest—the easiest thing to do. I'm going to do some sort of blend between what the cash flow is versus what the square footage is for what I think is probably a reasonable comparable value. And in the end my number will either be closer to what his is or what yours is.

Houston argues that the trial court was required to arrive at its appraisal based upon either the market data, cost, or income approach to valuation.[3] *See* TEX. TAX CODE ANN. § 23.0101 (Vernon 2001). It contends that the trial court erred by employing "some sort of blend between" the income approach and the market sales data approach. Relying on the Tax Code and *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 187 (Tex.2001) (Baker, J. concurring), Houston argues that the "Texas Supreme Court has recognized *only* these three appraisal techniques as acceptable for determining market value" and that "mixing the methods is a practice directly at odds with the widely used traditional methods of valuation sanctioned by the Supreme Court."

■ It is well settled that the three usual approaches to determining market value are the comparable sales, cost, and the income methods. *Religious of the Sacred Heart v. City of Houston*, 836 S.W.2d

---

3. Section 23.011 of the Tax Code provides as follows:

> If the chief appraiser uses the cost method of appraisal to determine the market value of real property, the chief appraiser shall:
> (1) use cost data obtained from generally accepted sources;
> (2) make any appropriate adjustment for physical, functional, or economic obsolescence;
> (3) make available to the public on request cost data developed and used by the chief appraiser as applied to all properties within a property category and may charge a reasonable fee to the public for the data;
> (4) clearly state the reason for any variation between generally accepted cost data and locally produced cost data if the data vary by more than 10 percent; and
> (5) make available to the property owner on request all applicable market data that demonstrate the difference between the replacement cost of the improvements to the property and the depreciated value of the improvements.

TEX. TAX CODE ANN. § 23.011 (Vernon 2001). Section 23.012 of the Tax Code provides as follows:

> If the chief appraiser uses the income method of appraisal to determine the market value of real property, the chief appraiser shall:
> (1) use rental income and expense data pertaining to the property if possible and applicable;
> (2) make any projections of future rental income and expenses only from clear and appropriate evidence;
> (3) use data from generally accepted sources in determining an appropriate capitalization rate; and
> (4) determine a capitalization rate for income-producing property that includes a reasonable return on investment, taking into account the risk associated with the investment.

TEX. TAX CODE ANN. § 23.012 (Vernon 2001). Section 23.013 of the Tax Code provides as follows:

> If the chief appraiser uses the market data comparison method of appraisal to determine the market value of real property, the chief appraiser shall use comparable sales data and shall adjust the comparable sales to the subject property.

TEX. TAX CODE ANN. § 23.013 (Vernon 2001).

606, 615–17 & n. 14 (Tex.1992). Although these are the three usual approaches to determining market value, they are not necessarily the exclusive methods by which market value may be determined. *See Sharboneau,* 48 S.W.3d at 186 ("It may be that in some cases involving undeveloped land, expert opinions based on the subdivision development method would be reliable, relevant, and admissible."). The proper inquiry is whether the appraisal method as a whole constitutes relevant and reliable evidence of market value. *Id.* at 183.[4] Contrary to the appraisal method employed in *Sharboneau,* the method Houston complains of on appeal is a true blend of two usual appraisal methods.[5] We hold that the appraisal method employed by the trial court produced relevant and reliable evidence of market value.

We overrule appellant's first issue.

## B. The Income Approach

In its second issue, Houston contends that the trial court erred when it considered the District's expert testimony and appraisal based upon the cost approach to

valuation for its appraisal of the property as of January 1, 2000. Rather, it argues that the income approach should have been employed to determine the value of Houston's property, as opposed to the "amalgamated 'blending' method invented by the trial court."

### 1. Waiver

 As a prerequisite for preserving a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely objection. TEX.R.APP. P. 33.1(a). An objection at trial not comporting with the complaint on appeal presents nothing for appellate review. *Scurlock Permian Corp. v. Brazos County,* 869 S.W.2d 478, 484 (Tex. App.-Houston [1st Dist.] 1993, writ denied). Houston objected at trial to "predicate," but failed to object that the cost approach was an unreliable method for valuing Houston's property as of January 1, 2000. We hold that Houston waived this complaint on appeal, because its objection at trial failed to comport with its complaint

---

4. In *Sharboneau,* the Court of Appeals reasoned that the subdivision development method was merely a hybrid of the sales comparison and income approaches to property appraisal, and, because the two methods are admissible individually, the court held that this "hybrid-classical" method was also valid. *City of Harlingen v. Estate of Sharboneau,* 1 S.W.3d 282, 288 (Tex.App.-Corpus Christi 1999), *rev'd,* 48 S.W.3d 177. The Supreme Court disagreed that the subdivision development method was a hybrid of two usual methods of appraisal, and held that "that the subdivision development method is distinct from both comparable sales analysis and the income method of appraisal." *Sharboneau,* 48 S.W.3d at 183–84. The Supreme Court reasoned that the "income" part of the subdivision development analysis is based solely on the speculative, piecemeal sale of the property, and that the method included numerous steps which were not present in the three classic appraisal methods. *Id.* at

184. Although the Supreme Court rejected utilizing the subdivision development analysis method of appraisal in *Sharboneau,* the Court did not completely preclude the use of the method. *Id.* at 184. The Court's refusal to summarily reject this method of valuation is consistent with its requirement that the appraisal method as a whole generate relevant and reliable evidence of market value, and is inconsistent with Houston's contention that the Supreme Court has recognized only these three appraisal techniques as acceptable for determining market value is not supported by *Sharboneau.*

5. Although the District's expert relied on the income approach in 2001, in order to ensure that his income analysis was correct, he also appraised the property using the cost and market approaches. Barzilla testified that the property was appraised at $47 per square foot under the market approach, and $45.70 under the income approach.

on appeal, and because Houston never objected to the reliability of the cost approach method of valuation at trial.

We overrule appellant's second issue.

## C. Sufficiency of the Evidence

In its third issue, appellant attacks the legal and factual sufficiency of the evidence.

### 1. Standard of Review

In reviewing a legal insufficiency point, we consider only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding, and disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex. 1992); *Frost Nat. Bank f/k/a Nat. Bank of Commerce v. Heafner*, 12 S.W.3d 104, 109 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). If there is any evidence of probative force to support the finding, we uphold that finding. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988); *Heafner*, 12 S.W.3d at 109.

In reviewing for factual sufficiency, we consider and weigh all of the evidence; we will set aside the verdict only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Heafner*, 12 S.W.3d at 109. We may not substitute our opinion with that of the trier of fact. *Heafner*, 12 S.W.3d at 109.

### a. The Expert Testimony

■ Jack Hughey, Houston's expert, testified that he appraised the property at $3,552,000 as of January 1, 2000 and "approximately" $4,500,000 as of January 1, 2001. Hughey's appraisal considered the market for sales and rental property, land values, and income and expense statements from three other properties. He employed the income approach for both years, and testified that this approach was more reliable than the cost or market value approaches. Hughey considered the cost approach unreliable because valuation of property should not be based upon what it cost to construct, but upon the amount of income the property generates. He testified that the market approach was flawed because property is unique, and that differences in size, location, rent, and age require adjustments, which are matters of opinion.

Chris Barzilla, the District's expert, testified that he appraised the property at $7,782,785 as of January 1, 2000. He considered the cost, income, and market approaches to determining value in 2000. He concluded that the cost approach was the most reliable approach, because the property did not have a history of income, as it was newly constructed.[6]

Barzilla did look at comparable sales of other properties and at "proforma income" data. The sales information he reviewed came from the Harris County Appraisal District's sales book, which reflects buyers, sellers, sales prices, and locations of properties. Barzilla testified that the sales comparison approach requires that an appraiser collect sales data of comparable types of property, and adjust the data for variables such as location, occupancy, age, condition, and size. Barzilla's review of the sale prices and rental rates of properties in competing markets substantiated

---

6. Comerica Bank was involved in financing some of the property at issue in this dispute, and was willing to loan $7,750,000 on the property. The land plus construction costs exceeded $7.7 million dollars.

his opinion that the cost approach was not an erroneous method of valuation.[7]

Barzilla appraised the property at $8,028,000 as of January 1, 2001. For 2001, he was able to perform a more comprehensive evaluation with the cost and market approaches. He appraised the property pursuant to the cost, income, and market approaches, and arrived at three different values. Considering that the property was not completely leased, Barzilla "put the most weight on the discounted cash flow." He compared the value arrived at by employing the discounted cash flow analysis to the values calculated by the cost and market approaches, and was satisfied with his valuation approach for 2001.

We conclude that the evidence is not so weak nor is the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. Furthermore, we conclude that the there is more than a scintilla of evidence to support the trial court's market value determination of Houston's property. The trial court's finding of market value was within the range of values supported by the evidence. Houston presented evidence that is inconsistent with the court's finding, but the court is vested with discretion to judge the credibility of the witnesses and the weight to be given their testimony. *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 866 (Tex.1982). The trier of fact may resolve conflicts and inconsistencies in the testimony of any one witness as well as the conflicting testimony of different witnesses. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). *See also Webb v. Jorns*, 488 S.W.2d 407, 411 (Tex. 1972). We cannot substitute our judgment or opinion for that of the finder of fact, even if there is conflicting evidence upon which a different conclusion could be reached. *Henderson v. Viesca*, 922 S.W.2d 553, 563 (Tex.App.-San Antonio 1996, writ denied). *See also Moore v. Bank Midwest, N.A.*, 39 S.W.3d 395, 401 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) ("The jury's finding of fair market value was within the range of values supported by the evidence, and it should not be overturned.").

We overrule appellant's third issue.

### D. Conclusion

We affirm the judgment of the trial court.

---

7. Houston provided the District with cost figures, which Barzilla incorporated into his calculation. Barzilla added the value of the land plus the construction costs to arrive at $7,782,785. He did not consider depreciation, because the property was new on January 1, 2000.