Opinion issued December 19, 2008 

 



 







In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00363-CV

____________


EVERARDO GUTIERREZ AND MARIA SANCHEZ, Appellants


V.


ARTURO MARTINEZ, Appellee






On Appeal from the County Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 811765






MEMORANDUM OPINION


 Appellants, Everardo Gutierrez and Maria Sanchez (collectively "appellants"),
appeal a take-nothing judgment entered pursuant to a jury verdict awarding them no
damages in a suit against Arturo Martinez. We determine (1) whether the verdict is
against the great weight and preponderance of the evidence; (2) whether the trial
court erred in not admitting affidavits filed pursuant to section 18.001 of the Texas
Civil Practice and Remedies Code (1) into evidence and, if so, if such error caused the
rendition of an improper judgment; (3) whether appellants preserved their complaints
regarding the lack of a proper foundation for certain statements by opposing counsel
and certain evidence admitted at trial; and (4) whether the trial court improperly
overruled objections to statements by opposing counsel contesting the necessity of
medical services and reasonableness of charges. We affirm.

Background

 Appellants and Martinez were involved in a traffic accident on March 30, 2002,
in which Martinez's car collided into the rear of Gutierrez's SUV, which Gutierrez
was driving, and in which Sanchez was a passenger, along with their infant, Ashley. (2) 
The hood and grill of Martinez's car hit the bumper of Gutierrez's truck, sliding under
it, causing a "strong scratch" to Gutierrez's truck and damage to Martinez's grill,
headlamp bevel, hood, and fender. Appellants sued Martinez, who did not contest his
negligence in causing the collision. A jury trial was subsequently held on December
12, 2006, solely on the issue of appellants' damages for physical pain and mental
anguish and their reasonable expenses of necessary medical care. 

 At trial, appellants read portions of the depositions of both appellants into the
record and called Martinez to testify. The jury was also provided medical records and
itemized statements of medical expenses for Gutierrez and Sanchez. Appellants did
not call any experts. Appellants did make a bill of exception to include in the record
Plaintiffs' Exhibits 3 and 4, which contained copies of the admitted medical records
and itemized statements for Sanchez and Gutierrez, respectively, but also included
affidavits of necessity of medical services and reasonableness of fees signed by
Wesley Wheeler, D.C., (3) for both Sanchez and Gutierrez and a narrative medical report
from Wheeler as to each patient. 

 The jury awarded appellants no damages. Appellants filed a "[m]otion for
judgment notwithstanding the verdict, or in the alternative, a motion for new trial,"
in which they asserted that they were entitled to recovery as a matter of law and that
the jury's verdict was against the great weight and preponderance of the evidence,
and complained that the trial court erred in excluding from evidence affidavits filed
pursuant to section 18.001 of the Texas Civil Practice and Remedies Code in order
to prove the reasonableness and necessity of appellants' medical treatment and
expenses. Attached to the motion were affidavits from two of appellants' counsel,
which made representations regarding statements made to them from an unnamed
juror regarding why the jury had awarded zero damages. 

 Martinez filed a response to appellant's motion which included an attached
affidavit from Martinez's counsel making representations regarding the same
conversation with the unnamed juror, disputing the assertions made by appellants'
counsel.

 The trial court did not rule on appellants' motion and it was overruled by
operation of law.Sufficiency Challenge

 We first address appellants' second issue challenging the factual sufficiency
of the evidence to support the jury's verdict awarding no damages to appellants for
(1) past physical pain and mental anguish, (2) future physical pain and mental
anguish, (3) past reasonable expenses of necessary medical care, and (4) future
reasonable expenses of necessary medical care. (4) Appellants assert that the jury's
verdict was against the great weight and preponderance of the evidence, arguing that
their evidence was uncontroverted and therefore the jury was required to award
damages.

A. Standard of review

 When a party attacks the factual sufficiency of an adverse finding on an issue
on which the party had the burden of proof, the party must demonstrate on appeal that
the adverse finding is against the great weight and preponderance of the evidence. 
See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). A reviewing court
must consider and weigh all of the evidence and can set aside a verdict only if the
evidence is so weak or the finding is so against the great weight and preponderance
of the evidence as to be clearly wrong and unjust. Id. In conducting our review, we
keep in mind "that it is the jury's role, not ours, to judge the credibility of the
evidence, to assign the weight to be given to testimony, and to resolve inconsistencies
within or conflicts among the witnesses' testimony." Walker v. Ricks, 101 S.W.3d
740, 749 (Tex. App.--Corpus Christi 2003, no pet.). 

B. Evidence before the jury

 The only evidence presented to the jury consisted of portions of the depositions
of Gutierrez and Sanchez, which were read to the jury, (5) the live testimony of
Martinez, and the medical records and bills for Gutierrez and Sanchez.

 1. Gutierrez's deposition excerpts

 In the portions of Gutierrez's deposition that were read to the jury, Gutierrez
stated that he was living and working in Georgia, driving a truck for a construction
company. He had been at that job for about a year. Prior to moving to Georgia, he
lived in Channelview for about a year, and it was while he lived there that the
accident occurred. At the time of the accident, he was also working in construction,
checking oil tanks and doing maintenance on them. The work did not involve lifting
with his hands, but did involve tightening bolts with a wrench or an air gun. He
worked there a total of seven months, three or four of them after the accident. 

 The car accident was the only accident he had ever been in during his life. He
hurt his neck and lower back in the accident. Before the accident, he had never hurt
his neck or lower back and had never been hurt on the job or hurt himself playing any
sport or doing housework. He had not seen a doctor for neck or back pain before the
accident, did not have a family doctor at the time of the accident, and had never been
to a hospital or clinic except when his children were born and for treatment after the
accident. While living in the Houston area and in Georgia, he never saw any other
doctor besides the one he had gone to about 15 times for treatment of his back and
neck, whose name he could not recall. 

 On the day of the accident, Gutierrez was driving to his insurance company,
accompanied by Sanchez and Ashley, when, about two blocks from his destination,
he heard Martinez hitting his brakes as both vehicles approached the corner of a
street. The impact was minor, though Gutierrez could "hear it hard." "Almost
nothing happened" to Gutierrez's vehicle, but Martinez's car was "[torn] up from the
front."

 He stopped his vehicle, spoke to Martinez, and he and Sanchez told Martinez
that they did not feel any pain. Martinez called the police. Gutierrez's vehicle did
not have to be towed away, there was not much damage to the back, no one left in an
ambulance and no one went to the emergency room after the accident. Gutierrez did
not hit his head on the steering wheel or glass; he was not bleeding after the accident;
he had no bruises; and neither Ashley nor Sanchez had any bruises, scrapes, or blood
on their faces or cuts. No one was thrown from the vehicle, but the impact caught
them unprepared. Everyone was wearing a seat belt. No ambulance came to the
scene, and Gutierrez did not ask the police to call one because he was frightened.
They were injured, but were in shock, and so when the police officer asked them if
they wanted to call an ambulance, Gutierrez said, "No." 

 Gutierrez went home after the accident, talked a bit, and then ate. He stayed
home on Sunday, having no plans for the day, and went to work on Monday, where
he did his normal duties. He did not tell his supervisor that he was in pain, nor did
he say that he could not do certain things. He did not miss any time from work on
account of the accident. He began feeling pain three or four days after the accident. 
He went to Oaks Pain and Rehab Clinic for therapy on the recommendation of his
attorney, after he told the attorney that he was feeling poorly. He waited about twelve
days after the accident before he went to the clinic because he had no insurance or
money to see a doctor. He did not have to wear a brace on his neck or around his
back nor did he have to use crutches. 

 He moved out of state in late June 2002 and stopped going to therapy. He also
stopped playing volleyball because he did not have many friends with whom to play
and because it hurt him, although he played two or three times after the accident. The
therapy helped him, and he no longer had pain in his neck, although his back
continued to hurt.

 The pain in his neck lasted two or three months and was about a four or five
on a scale of one to 10. At the time of his deposition, his neck was fine and did not
hurt him much, not hurting "anymore" after about two to three months after the
accident. The back pain had not gone away. A week after the accident, he would
rate his pain about an eight because he "can't be bent over very much" because "it
hurts." Gutierrez testified that the only problem that he had regarding pain was when
he bent over for long periods of time, "incline[d]," or sat for a long period of time. 
He explained that sometimes he had to remain bent over, such as when tying his shoe
laces. He did not see any doctor in Georgia because he had no money to pay doctors.
No doctor told him that he needed any surgery, and he had no appointments
scheduled with any doctor. He did not pay any money to the doctor whom he saw at
Oaks Clinic and was not getting collection letters. He did not recall what the bill was. 
He did not go back to the clinic because he had moved out of state to get a better job
and to make more money. 

 When asked if he had nightmares or breakdowns because of the accident, he
responded "just when I drive," explaining that every time he hit the brakes, he feared
that someone was going to hit him from behind. He had not seen a psychologist or
psychiatrist. 

 2. Sanchez's deposition excerpts

 Sanchez lived with Gutierrez and had lived with him for about four and a half
years at the time of her deposition. At the time of the accident, she was working as
a cashier and morning server at a restaurant. She had started working there about two
weeks before the accident and continued working for about two weeks after the
accident. She had stopped working because Gutierrez had to undergo therapy at the
same time that she had to work and they only had one vehicle. 

 She did not receive any cuts or bruises in the accident, but she was unable to
go back to work that day. She did not ask the police for an ambulance because she
and Gutierrez were frightened. They also did not feel any pain at the time. Sanchez
went back to work the following day. She and Gutierrez did not go to the doctor for
about two weeks because they had no money and did not know where to go. Sanchez
went to the clinic to which her attorney referred her, but her pregnancy limited the
treatment that she was able to receive. Her baby was born normally, full-term, and
without any birth defects. 

 Sanchez had never been in a car accident or injured before, nor had she ever
been to a doctor or chiropractor for neck or back pain before the accident. Her waist
and "back with the shoulders" hurt as a result of the accident. She also had chest pain
because of the pressure of the seat belt, but that only lasted three or four weeks. She
had pain in her right shoulder, but it had begun to feel better with therapy and it went
away after three or four weeks. She still had pain between her shoulders whenever
she sat for too long and whenever she bent over. She did not see a doctor in Georgia
because she did not think one could help and she did not have money. She said that
she almost always had pain between her shoulders and she ranked her pain during the
deposition as a six or seven on a scale of 10. No doctor told her that she needed any
surgery, and she had no appointments scheduled with any doctor. 

 Sanchez testified that the accident was a minor one because "not a lot
happened." 

 She was working as a housewife at the time of the deposition, but was looking
for a job. She stated that she could not do work which required her to use her back,
but she could work in a restaurant. She had not worked since the accident and had
stayed home with the children. She explained that she had begun looking for work
two months before the deposition and was looking for employment which would
permit her to take care of her children while she was working.

 When asked if she had had a mental breakdown or suffered severe depression,
she stated that, for about three months, she had had headaches. She did not know if
they were caused by the accident, but after the accident, she had many headaches. 
She had not seen a psychologist or psychiatrist because she and Gutierrez had no
money to pay one, but when asked if she wanted to see one, Sanchez stated that she
and Gutierrez had just had a kind of fright. 

 3. The medical and billing records

 The trial court admitted into evidence Plaintiff's Exhibits 1 and 2, which were
the medical and billing records from the Oaks Pain and Rehab Clinic for both
Gutierrez and Sanchez.

 The billing records for Gutierrez indicated a comprehensive initial
examination; 14 therapy treatments consisting of massage, hot packs, and electrical
muscle stimulation in the lumbar area; one visit with a limited examination, massage,
mechanical traction, and diathermy; and one visit with massage, mechanical traction,
and diathermy. The total charges were $1498.00. The patient health history indicated
that the pain began seven days after the accident and was "on and off" in the lower
back. The physical examination indicated that various tests were done on the lumbar
region, but there is no explanation in the record as to the significance of the tests or
their meanings. The diagnosis is lumbosacral strain/sprain, myospasms/myofascial
pain syndrome, and deep and superficial muscle spasms. There was no medical
narrative before the jury. (6) The records as given to the jury are not clear as to the
attending medical professional, but the initial recommendations appear to be from
Wesley Wheeler, D.C. 

 The billing records for Sanchez reflect a comprehensive initial examination;
16 therapy treatments consisting of massage, hot packs in the cervical, thoracic and
lumbar area, and electrical muscle stimulation in the trapezius and lumbar area; and
one established, expanded examination. The total charges were $1626.00. The
physical examination reveals various tests to various parts of Sanchez's body, but
there is no explanation as to the significance of the tests or their meanings. The
patient health history indicated that the onset of the pain was the evening of the
accident and that the pain was continuous and persistent. The diagnosis was
cephalgia (headaches), thoracic strain/sprain, lumbosacral strain/sprain, left and right
shoulder/trapezius strain/sprain, chest contusion, myospasms/myofascial pain
syndrome, deep and superficial muscle spasms, and restriction of ranges of motion.
There was no medical narrative before the jury. (7) The records given to the jury are
not clear as to the attending medical professional, but initials appearing on the
relevant pages resemble those of Wesley Wheeler, D.C., which appear in Gutierrez's
records.


 4. Testimony of Martinez

 Martinez testified that he spoke with appellants at the scene and asked if they
were injured. (8) Appellants told Martinez that they were fine, but the situation was
tense and appellants appeared upset or nervous. Martinez had not spoken to
appellants since that time and knew nothing about their bills or treatment.

 In describing the accident, Martinez explained that he had been distracted by
a man who almost stumbled into the road; in trying to avoid the man, Martinez
attempted to move into the next lane, which was occupied, and the accident occurred. 
Appellants' vehicle, an "SUV" truck, had a "strong scratch" and a possible minor
change in positioning, and Martinez's car, having a lower profile, had its bumper go
under appellants' truck, so that there was minor impact damage to the grill, headlamp
bevel, and fender and some of the hood.

C. Analysis

 "The mental processes by which a jury determines the amount of damages is 
ordinarily incognizable by an appellate court." Walker, 101 S.W.3d at 750 (citing
Thomas v. Oldham, 895 S.W.2d 352, 359-60 (Tex. 1995)). It is peculiarly within the
jury's discretion to determine the dollar amount of a plaintiff's pain and suffering,
and the jury has great discretion in fixing this amount. Id. at 750.

 Appellants, citing Lamb v. Franklin, 976 S.W.2d 339, 341 (Tex. App.--
Amarillo 1998, no pet.), argue that uncontroverted evidence of objective injuries
existed and, therefore, the jury's award of no damages for past pain and suffering was
against the great weight and preponderance of the evidence. Appellants also argue
that their testimony regarding mental anguish, future pain and suffering, past medical
expenses, and future medical expenses was uncontroverted. 

 Even when there is uncontroverted evidence of an injury, a jury may properly
deny an award of any damages when the injuries sustained are subjective, such as
back and neck soft-tissue injuries. See Dollison v. Hayes, 79 S.W.3d 246, 250-52
(Tex. App.--Texarkana 2002, no pet.); Lamb, 976 S.W.2d at 341-42; Hammett v.
Zimmerman, 804 S.W.2d 663, 665, 668-69 (Tex. App.--Fort Worth 1991, no writ);
Blizzard v. Nationwide Mut. Fire Ins. Co., 756 S.W.2d 801, 804-05 (Tex.
App.--Dallas 1988, no writ). A jury may disbelieve a witness, even if the witness's
testimony is uncontradicted. Barrajas v. VIA Metropolitan Transit Auth., 945 S.W.2d
207, 209 (Tex. App.--San Antonio 1997, no writ). A jury is free to reject the
testimony of a plaintiff, and a plaintiff's doctor, as to the existence, amount, or
severity of the plaintiff's pain. Dollison, 79 S.W.3d at 252. Moreover, even the fact
of injury does not prove compensable pain and suffering. See id. at 253; Blizzard,
756 S.W.2d at 805. A jury may also conclude, even when an objective injury is
shown, that the injury is attributable to factors other than a defendant's negligence.
McDonald v. Dankworth, 212 S.W.3d 336, 349 (Tex. App.--Austin 2006, no pet.);
see Walker, 101 S.W.3d at 747 (holding that in order to be entitled to recover
damages, plaintiff must establish causal nexus between event sued upon and 
plaintiff's injury, even when liability is established); Barrajas, 945 S.W.2d at 209-10
(holding that jury was entitled to scrutinize medical bills and to determine which bills
and future bills were connected to accident); Hilland v. Arnold, 856 S.W.2d 240, 243
(Tex. App.--Texarkana 1993, no writ) (holding that jury had discretion to disbelieve
appellant regarding cause of his continuing pain when his testimony was only direct
evidence of causation). Furthermore, for recovery of medical expenses, there must
be evidence that the charges were reasonable and necessary. Jackson v. Gutierrez,
77 S.W.3d 898, 903 (Tex. App.--Houston [14th Dist.] 2002, no pet.); Rodriguez-Narrea v. Ridinger, 19 S.W.3d 531, 532 (Tex. App.--Fort Worth 2000, no pet.). 

 In order to be entitled to damages for mental anguish, a plaintiff must show
more than mere worry or anxiety; there must be proof of "intense pain of body or
mind . . . or a high degree of mental suffering." Hicks v. Ricardo, 834 S.W.2d 587,
590 (Tex. App.--Houston [1st Dist.]1992, no writ) (citations omitted). Damages for
future mental anguish may be awarded only if there is evidence that there is a
reasonable probability that they will be suffered in the future. Id. The fact that a
person was upset after an accident is not sufficient to establish mental anguish. Elliot
v. Dow, 818 S.W.2d 222, 225 (Tex. App.--Houston [14th Dist.] 1991, no writ). In the present case, the jury could have reasonably concluded that no damages
were warranted because (1) the accident was minor, appellants were in the vehicle
that received the lesser damages, and the damages to appellants' vehicle were
minimal; (2) both appellants asserted at the scene that they were not injured and did
not seek immediate medical treatment; (3) appellants received treatment only from
a chiropractor to whom they had been referred by their attorney almost two weeks
after the accident; (4) appellants sought no treatment after leaving the Houston area;
(5) appellants continued to work after the accident; (6) there were no records or
testimony from a physician attesting to the injuries or relating them to the accident;
(7) there was no evidence that the medical expenses were reasonable and necessary; (9)
(8) appellants' complaints were subjective, and there was no objective evidence of
injuries or future necessary medical care; and (9) there was no testimony of mental
anguish, only worry and vexation. We thus hold that the jury's findings of zero
damages for past and future physical pain and mental anguish and past and future
reasonable expenses of necessary medical care are not so against the great weight and
preponderance of the evidence so as to be clearly wrong and unjust. See Dow
Chemical, 46 S.W.3d at 242. 

 We overrule appellant's second issue.

Exclusion of Affidavits

 In their first issue, appellants complain that the trial court erred in not admitting
into evidence affidavits filed in accordance with section 18.001 of the Texas Civil
Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. §18.001. 
Appellants assert that they complied with all provisions of section 18.001 and,
therefore, the trial court abused its discretion in not admitting the affidavits. 
Appellants further contend that this action prohibited them from introducing evidence
establishing that their medical expenses were reasonable and necessary and suggest
that, because of the lack of such information, the jury did not award appellants their
medical expenses.

A. Factual background

 Shortly after filing suit, and approximately two-and-one-half years before trial,
appellants filed two affidavits with the district clerk--one for each
appellant--pursuant to Texas Civil Practice and Remedies Code section 18.001, each
entitled, "Affidavit of necessity of medical services and reasonableness of fees." The
affidavits attested that certain medical services provided were necessary and the
amounts charged for them were reasonable. Medical records and an itemized
statement detailing the charges for medical services were attached to each affidavit,
along with a narrative report from the person who provided the medical services. No
counteraffidavits appear in the record.

 On December 11, 2006, the day before trial was to begin, a hearing was
conducted during which the trial court admitted two exhibits, "Plaintiffs' 1 and 2,"
commenting that the exhibits were being admitted with "those changes made that we
have discussed." (10) There was no objection made by either party in response to this
ruling by the court. Plaintiffs' Exhibits 1 and 2 are records of medical services
provided and itemized statements for such services. These exhibits do not contain the
filed affidavits of necessity of medical services and reasonableness of fees nor the
narrative reports by Wheeler. 

 During trial, appellant attempted to offer "additional exhibits or alternative
Plaintiffs' Exhibit 1 and 2 that have already been refused, including the affidavits." 
The court responded that its ruling was on the record--the records were admitted, but
the affidavits would not be admitted. An unrecorded bench conference then occurred. 
 Later in trial, outside of the presence of the jury, the trial court held another 
hearing on the affidavits. In that hearing, the court stated that because the section
18.001 affidavits had not been controverted "they are going to be admitted; however,
the affidavits are going to be removed before they are presented to the jury." The
court noted that appellant took exception to the ruling. Appellants made a bill of
exception, offering Plaintiffs' Exhibits 3 and 4--which were identical to Plaintiffs'
Exhibits 1 and 2 except for the addition of the affidavits and narrative reports--for
inclusion in the record. Appellants also recited a number of cases into the record.

 During this hearing, the trial court explained its ruling, stating:

Okay. I thought all the arguments were that you believe that the
affidavits themselves are evidence, that this jury should consider the
18.001 affidavits that are actually a threshold for the Court so that the
doctor does not--that the affidavits themselves should be some type of
evidence to this jury. And my ruling is that, obviously the records are
coming in because the 18.001's, the requirements of 18.001, are
satisfied; however, the affidavits, from my reading of the case law are
not evidence that this jury should--it should use. It's the records
themselves, not the affidavits. 


 

 After the trial was concluded, appellants filed a motion for judgment
notwithstanding the verdict or, in the alternative, motion for new trial, in which they
complained of the trial court's exclusion of the affidavits and argued that it led to the
rendition of an improper verdict. Appellants averred that the jury may have surmised
that it could not award damages due to the language in question number one of the
court's charge, which asked for a finding on "reasonable expenses of necessary
medical care." 

B. Applicable law

 A claim for medical expenses must be supported by evidence that such
expenses were reasonably necessary for the plaintiff to incur as a result of the
plaintiff's injury. See Jackson, 77 S.W.3d at 903; Rodriguez-Narrea, 19 S.W.3d at
532. The traditional means of doing so is by expert testimony at trial. Rodriguez-Narrea, 19 S.W.3d at 532. 

 Section 18.001 of the Texas Civil Practice and Remedies Code (11) provides a limited exception to the rule requiring expert testimony and to the rule that
affidavits are inadmissible to prove reasonableness and necessity. Hong v. Bennett,
209 S.W.3d 795, 801 (Tex. App.--Fort Worth 2006, no pet). By complying with the
requirements of section 18.001(b), a plaintiff may offer affidavits, rather than present
expert testimony, if the opposing party does not file a controverting affidavit as may
be done under section 18.001(e). Id. However, if the opposing party files a proper
controverting affidavit, it can force the offering party to prove reasonableness and
necessity by expert testimony at trial. Id. 

 Section 18.001(b) touches on three elements of proving damages for past
medical expenses: (1) the amount of the charges for medical expenses; (2) the
reasonableness of the charges; and (3) the necessity of the charges. Owens v. Perez,
158 S.W.3d 96, 110 (Tex. App.--Corpus Christi 2005, no pet.). However, evidence
presented in compliance with section 18.001 does not conclusively establish the
amount of damages, and a plaintiff may still recover only for reasonable and
necessary medical expenses specifically shown to have resulted from treatment made
necessary by the negligent acts or omissions of the defendant. Id. 

 

 An uncontroverted section 18.001(b) affidavit provides legally sufficient--but
not conclusive--evidence to support a jury's finding that the amount charged for a
service is reasonable and necessary. Hong, 209 S.W.3d at 800. The affidavit does
not establish a causal nexus between the accident and the medical expenses. Walker,
101 S.W.3d at 748. Accordingly, even when there is an affidavit properly filed under
section 18.001 setting out past medical expenses, a jury may nonetheless determine
that no damages should be awarded. Walker, 101 S.W.3d at 747-48. The jury is not
required to award a plaintiff the amount of damages established in uncontroverted
affidavits filed pursuant to section 18.001, but if it chooses to do so, the affidavits are
sufficient evidence to support such a finding of fact. Barajas, 945 S.W.2d at 208-09;
see also Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b) ("Unless a controverting
affidavit is filed . . . an affidavit that the amount a person was charged for a service
was reasonable . . . and necessary is sufficient evidence to support a finding of fact
. . . that the amount charged was reasonable or that the service was necessary.").
When causation is contested, such as when there is a dispute over the seriousness of
an accident that allegedly caused the medical expenses, the jury is not bound to award
the damages set forth in an uncontroverted affidavit under section 18.001, but is
entitled to answer the damages issue as it deems appropriate. (12) Beauchamp v.
Hambrick, 901 S.W.2d 747, 748-49 (Tex. App.--Eastland 1995, no writ). 

C. Analysis

 Appellants argue that the trial court improperly excluded their affidavits
concerning the cost and necessity of medical services provided to them, filed more
than 30 days before trial pursuant to section 18.001 of the Texas Civil Practice and
Remedies Code. Appellants assert that section 18.001 specifically permits the
admission of such affidavits when they comply with the statutory provisions.

 We agree.

 The plain language of section 18.001, and the case law interpreting it, indicates
that it is an evidentiary statute that allows for the admissibility of the affidavits at
trial. See Tex. Civ. Prac. & Rem. Code Ann. § 18.001 (b), (d); Hong, 209 S.W.3d
at 800; Beauchamp, 901 S.W.2d at 749. Accordingly, the trial court abused its
discretion in excluding the affidavits from evidence. See Hong, 209 S.W.3d at 799
(holding that trial court's ruling in excluding evidence is reviewable under abuse-of-discretion standard). 


 However, we disagree with appellants' contention that this error probably
caused the rendition of an improper judgment. See Horizon/CMS Healthcare Corp.
v. Auld, 34 S.W.3d 887, 906 (Tex. 2000) (holding that erroneous evidentiary ruling
will not be reversed unless it probably caused rendition of improper judgment). 

 We first note that the trial court did not preclude appellants from offering any
evidence that the medical expenses were reasonable and necessary; it denied them
only the opportunity to offer such evidence through an affidavit. "Without a section
18.001(b) affidavit" in evidence, "a plaintiff must prove the reasonableness and
necessity of such expenses by expert testimony." Hong, 209 S.W.3d at 795; Jackson,
77 S.W.3d at 903; Rodriguez-Narrea, 19 S.W.3d at 532. 

 We next observe that, in order to show harm from an erroneous evidentiary
ruling, appellants must show that the judgment turned on the evidence excluded or
admitted by the ruling. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753-54
(Tex. 1995). Because the evidence in question dealt only with appellants' past
medical expenses, the entire judgment could not turn on such evidence. (13) At most,
only the question of the past medical expenses was affected. More significantly,
given all the testimony in this case, it is evident that the jury's verdict stemmed from
its rejection of a causal nexus between the accident and the injuries as reflected in the
findings of no damages for physical pain and mental anguish. The jury's findings that
there were no past reasonable expenses of necessary medical care for either appellant
are consistent with such rejection. The verdict "turned" on the issue of causation, not
the absence of non-conclusive evidence regarding the reasonableness and necessity
of appellants' past medical expenses. 

 We hold that, under the record before us, the error in not admitting the
affidavits did not probably cause the rendition of an improper judgment, and we
overrule appellants' first issue.Challenges to Admission of Evidence and Opposing Counsel's

Remarks Regarding Property Damage 


 In their third issue, appellants contend that the trial court erroneously admitted
evidence regarding property damage, and permitted Martinez to make statements in
opening statement and closing argument regarding a causal link between property
damage and injuries, without first laying a foundation by way of expert testimony.

A. Challenge to admission of evidence

 In a portion of their third issue, appellants contend that the trial court
erroneously admitted evidence, over their objection, "that the collision was minor, did
little damage to the vehicles, and therefore could not have caused [a]ppellant's
injuries." The disputed evidence consisted of portions of Gutierrez's own deposition,
in which he provided his own factual observations regarding the damage to his truck.
Appellants assert that the admission of such evidence was erroneous because no
testimony--expert or otherwise--"was introduced to form a foundation establishing
any causal connection between the severity of the property damage and the likelihood
of injury to [a]ppellants." Appellants argue that such a connection could not be
established by general experience and common sense, but required expert testimony.

 In their argument under this issue, appellants cite to two portions of the record
related to the admission of evidence. (14) The first is a discussion about sections of
Gutierrez's deposition to which appellants objected, and the second is an actual
section of Gutierrez's deposition that was read to the jury. Review of both of these 
portions of the record reveal that no objections to the admission of the testimony were
lodged on the ground asserted now on appeal. 

 In order to preserve a complaint for appellate review, it is necessary that a
complaint be made to the trial court by a timely request, objection, or motion and that
the trial court rule on the request, objection, or motion either expressly or implicitly
or refuse to rule, in which case the party must object to the court's refusal. Tex. R.
App. P. 33.1(a). Neither of appellants' cited objections raised a complaint that
Gutierrez's testimony was inadmissible due to a lack of a proper foundation because
there had been no expert testimony establishing a causal connection between the
severity of the property damage and the likelihood of injury to them. The trial court,
accordingly, never had an opportunity to rule on the complaint that appellants now
raise on appeal.

 An objection at trial that does not comport with the complaint on appeal
presents nothing for review. See Houston R. E. Income Props. XV, Ltd. v. Waller
County Appraisal Dist., 123 S.W.3d 859, 862 (Tex. App.--Houston [14th Dist.]
2003, no pet.); Scurlock Permian Corp. v. Brazos County, 869 S.W.2d 478, 484 (Tex.
App.--Houston [1st Dist.] 1993, writ denied). A party may not enlarge a ground of
error on appeal to include an objection not asserted at trial. Pfeffer v. S. Texas
Laborers' Pension Trust Fund, 679 S.W.2d 691, 693 (Tex. App.--Houston [1st Dist.]
1984, writ ref'd n.r.e.). Rather, in order for a complaint to be preserved for appellate
review, "the complaint raised on appeal must be the same as the complaint presented
to the trial court." Sefzick v. Mady Dev., L.P., 231 S.W.3d 456, 464 (Tex.
App.--Dallas 2007, no pet.). Because appellants did not object at trial that the
evidence was inadmissible because no foundation had been laid by expert testimony
establishing a causal connection between the property damage and appellants'
injuries, this complaint has not been preserved for appellate review. See Tex. R. App.
P. 33.1(a)(1); Sefzick, 231 S.W.3d at 464; Houston R. E. Income Props. XV, 123
S.W.3d at 862; Scurlock, 869 S.W.2d at 484; Pfeffer, 679 S.W.2d at 693.

B. Challenges to remarks by counsel

 In the balance of their third issue, appellants argue that the trial court
improperly permitted remarks by Martinez's counsel in opening statement and closing
argument "that the collision was minor, did little damage to the vehicles, and
therefore could not have caused [a]ppellant's injuries," when no testimony--expert 
or otherwise--"was introduced to form a foundation establishing any causal
connection between the severity of the property damage and the likelihood of injury
to [a]ppellants." Review of the portions of the record containing the challenged
remarks reveals that no objections were lodged on this ground at either opening
statement or closing argument. (15) Accordingly, appellants have likewise failed to
preserve their contentions on appeal regarding the challenged remarks. See Tex. R.
App. P. 33.1(a)(1); Sefzick, 231 S.W.3d at 464; Houston R. E. Income Props. XV, 123
S.W.3d at 862; Scurlock, 869 S.W.2d at 484; Pfeffer, 679 S.W.2d at 693. 

 We overrule appellant's third issue.

Challenge to Remarks Regarding the 

Necessity of Medical Treatment and Reasonableness of Expenses 


 In their fourth and final issue, appellants complain that the trial court
improperly overruled their objections to certain portions of Martinez's opening
statement and closing argument, which contested the necessity of the medical
treatment and reasonableness of expenses, contested their relation to the accident, and
invited the jury to judge the medical records. Appellants argue that, because Martinez
did not file controverting affidavits, he was precluded, under Texas Civil Practice and
Remedies Code section 18.001(e), from introducing evidence controverting the
reasonableness and necessity of appellants' medical bills and treatment. See Tex.
Civ. Prac. & Rem. Code Ann. § 18.001(e); see also Beauchamp, 901 S.W.2d at 749
(holding that section 18.001 provides for exclusion of evidence contrary to affidavit,
upon proper objection, in absence of properly filed counteraffidavit). Appellants then
extrapolate that Martinez was therefore prohibited from suggesting or arguing that the
bills and treatment were not reasonable and necessary or related to the accident. Appellants provide no authority supporting such an extrapolation, and we have
found none. To the contrary, as noted previously, it is well-established that affidavits
submitted under section 18.001 of the Texas Civil Practice and Remedies Code are
not conclusive evidence. Walker, 101 S.W.3d at 748; Barajas, 945 S.W.2d at
208-09; Beauchamp, 901 S.W.2d at 748-49. It is within the discretion of the jury
to consider the amounts claimed therein and to accept or to reject them. Barajas, 945
S.W.2d at 208-09. Accordingly, although evidence contravening the affidavits is
properly excluded in the absence of a timely filed counteraffidavit, arguments
contesting affidavits of reasonable and necessary expenses submitted under section
18.001 would not be inappropriate. See, e.g., Grove v. Overby, No. 03-03-00700-CV,
2004 WL 1686326, at *6 (Tex. App.--Austin July 29, 2004, no pet.) (memo op.)
(rejecting contention that section 18.001 prevents defendant from cross-examining
plaintiff and making arguments to jury impugning reasonableness and necessity of
medical expenses, even when counteraffidavits are not filed). 

 We overrule appellants' fourth issue.

Conclusion

 We affirm the judgment of the trial court.

 




 Tim Taft

 Justice

 


Panel consists of Justices Taft, Keyes, and Alcala.
1. Tex. Civ. Prac. & Rem. Code Ann. § 18.001 (Vernon 2008).
2. Sanchez was also about two months pregnant at the time of the accident.
3. "D.C." is an abbreviation for "Doctor of Chiropractic."
4. In their reply brief, appellants assert that they are challenging both the factual
and legal sufficiency of the evidence. However, in their original brief on
appeal, appellants asserted only that "there was insufficient evidence to support
the jury's verdict as a matter of law." Appellants did not cite the proper
standard of review for legal sufficiency, did not provide any analysis of the
evidence under that distinct standard, and did not request that we reverse and
render, but asked only for a new trial, which is the proper relief for factual
insufficiency. Furthermore, in their reply brief, appellants specifically call this
Court's attention to the "correct standard of review" under which they wish
their issue reviewed, stating that "this Court must consider the entire record
and set aside the verdict if it is so contrary to the overwhelming weight and
preponderance of the evidence that it is clearly wrong and manifestly unjust." 
This states a factual-sufficiency standard of review. See Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001). To the extent, if any, that appellants
might also have been attempting to attack the legal sufficiency of the evidence,
that issue has not been properly briefed, and we need not address it. See Tex.
R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record.");
see, e.g., La Sara Grain Co. v. First Nat'l Bank of Mercedes, 673 S.W.2d 558,
568 (Tex. 1984) (op. on reh'g) (declining to remand case for consideration of
factual insufficiency issue when factual sufficiency point was not separately
briefed from legal sufficiency issue and analysis of record in brief was for legal
sufficiency). 
5. Both testified through an interpreter.
6. Medical narratives were included in the documents filed pursuant to section
18.001 of the Texas Civil Practice and Remedies Code, but they were not
admitted by the trial court and not considered by the jury. Therefore, they are
not part of our review.
7. See footnote 6.
8. Martinez spoke to appellants in Spanish.
9. Appellants attempted to submit affidavits of costs and necessity of services, but
the trial court excluded them. Appellants did not attempt to put on any expert
testimony to prove the reasonableness and necessity of the medical expenses. 
See Jackson v. Gutierrez, 77 S.W.3d 898, 903 (Tex. App.--Houston [14th
Dist.] 2002, no pet.) (holding that plaintiff must prove that medical expenses
are reasonable and necessary either by submitting affidavits in compliance with
section 18.001 or by presenting expert testimony); Rodriguez-Narrea v.
Ridinger, 19 S.W.3d 531, 532 (Tex. App.--Fort Worth 2000, no pet.) (holding
that when plaintiff failed to file affidavits 30 days before trial, plaintiff was 
required to prove reasonableness and necessity through traditional means, i.e.,
expert testimony). 
10. Although this statement implies a previous discussion, no reporter's record of
any other pretrial hearing appears in the record, although the docket sheet
indicates that various other hearings occurred prior to trial. The record of this
hearing also seems to begin abruptly, as if only a portion of the hearing was
transcribed. 
11. Section 18.001 of the Texas Civil Practice and Remedies Code provides:

 

 (a) This section applies to civil actions only, but not to an action on a sworn
account.


 (b) Unless a controverting affidavit is filed as provided by this section, an
affidavit that the amount a person is charged for a service was reasonable
at the time and place that the service was provided and that the service was
necessary is sufficient evidence to support a finding of fact by judge or jury
that the amount charged was reasonable or that the service was necessary.


 (c) The affidavit must: 


 (1) be taken before an officer with authority to administer oaths;

 

 (2) be made by:


 (A) the person who provided the service; or


 (B) the person in charge of records showing the
service provided and charge made; and


 (3) include an itemized statement of the service and charge.


 (d) The party offering the affidavit in evidence or the party's attorney must
serve a copy of the affidavit on each other party to the case at least 30 days
before the day on which evidence is first presented at the trial of the case.


 (e) A party intending to controvert a claim reflected by the affidavit must
serve a copy of the counteraffidavit on each other party or the party's
attorney of record:


 (1) not later than:


 (A) 30 days after the day the party receives a copy of
the affidavit; and


 (B) at least 14 days before the day on which
evidence is first presented at the trial of the case; or 


 (2) with leave of the court, at any time before the commencement
of evidence at trial.


 (f) The counteraffidavit must give reasonable notice of the basis on which
the party serving it intends at trial to controvert the claim reflected by the
initial affidavit and must be taken before a person authorized to administer
oaths. The counteraffidavit must be made by a person who is qualified, by
knowledge, skill, experience, training, education or other experience, to
testify in contravention of all or part of any of the matters contained in the
initial affidavit. 


 Tex. Civ. Prac. & Rem. Code Ann. § 18.001.
12. See, e.g., Sanders v. Perez, No. 05-97-00454-CV, 1999 WL 318860, at *3-4
(Tex. App.--Dallas May 21, 1999, no pet.) (not designated for publication)
(reversing trial court's entry of judgment notwithstanding verdict awarding
total amount of medical expenses set forth in uncontroverted affidavits under
section 18.001(b); holding that affidavits did not establish cost, necessity, and
reasonableness of treatment as matter of law and jury could consider severity
of accident and injuries and award damages consistent with jury's finding of
causation, believing some injuries were caused by accident, but not all). 
13. Appellants suggest that the jury considered the absence of such affidavits
during their deliberations and would have awarded all the damages requested
if the affidavits had been provided. Appellants apparently base this assertion
on allegations made in post-trial affidavits of two trial counsel regarding 
hearsay statements of a juror with whom counsel had a conversation after trial.
Martinez disputes these contentions, and his counsel filed a counteraffidavit
relating her recollection of the conversation and the hearsay statements from
the juror. We do not consider any of these affidavits because the rules of civil
procedure and civil evidence prohibit the consideration of evidence of
statements by jurors regarding matters or statements that occurred during the
course of jury deliberations, unless it involves an outside influence. See Tex.
R. Civ. P. 327(b); Tex. R. Evid. 606(b); Soliz v. Saenz, 779 S.W.2d 929, 931
(Tex. App.--Corpus Christi 1989, writ denied). 
14. Appellants also provide a citation to Gutierrez's entire deposition as contained
in the clerk's record. Because appellants offered Gutierrez's deposition into
evidence, and so cannot be suggesting that the trial court erred in admitting all
of it, we review only the specifically cited portions of the deposition of which
appellants complain under this issue.


 We note that, in their brief, appellants also describe testimony from Martinez
regarding the collision, to which they lodged relevancy objections, but
appellants do not cite to this testimony in the discussion of their third issue or
make a complaint thereto. Accordingly, we do not address whether the
admission of such testimony was error. See Tex. R. App. P. 38.1(i) ("The brief
must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record.") 
15. The record also discloses that no objection on any ground was lodged to the
challenged portion of the closing argument.